*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JOYCE CRAWFORD,

        Claimant-Appellant,

v

DEPARTMENT OF LABOR AND ECONOMIC
OPPORTUNITY/UNEMPLOYMENT
INSURANCE AGENCY,

        Appellee,

and

HOPE NETWORK WEST MICHIGAN,

        Respondent-Appellee.

UNPUBLISHED
January 19, 2023

No.  357790
Kent Circuit Court
LC No.  20-009699-AE

Before:  GLEICHER, C.J., and MARKEY and RICK, JJ.

PER CURIAM.

Claimant, Joyce Crawford, appeals by leave granted [1] the order of the Kent Circuit Court. That court affirmed the decision of the Unemployment Insurance Appeals Commission (UIAC) that the Unemployment Insurance Agency (UIA) could properly find that 5 out of 40 specified weeks' worth of claimant's unemployment benefits were obtained fraudulently, and therefore, restitution and associated penalties were appropriate for those weeks.  While the UIAC urged the circuit court to use its powers of equity to accordingly alter the original amount of $23,077.72 in total penalties due, the circuit court declined to do so.  Claimant argues on appeal that the redetermination in question was issued improperly.  We agree, and reverse the trial court.

---

[1] *Crawford v Dep't of Labor and Economic Opportunity/Unemployment Ins Agency*, unpublished order of the Court of Appeals, entered October 8, 2021 (Docket No. 357790).

## I. BACKGROUND

This case stems from a period in 2009 and 2010 during which claimant received unemployment benefits under the Michigan Employment Security Act (MESA), MCL 421.1 *et seq*. At the time in question, claimant was a part-time worker for Hope Network West Michigan. Between June 13, 2009 and April 10, 2010, claimant received the maximum unemployment benefits available to her. Beginning in January 2010, the UIA sent a series of notices to claimant, stating that she was ineligible for some or all the benefits that she received and that restitution for overpayment was due. On March 11, 2010, the UIA issued a no-fraud redetermination for unspecified claim weeks, finding that claimant did not intentionally misrepresent her claims in order to obtain those benefits. In March 2011, Heather Krebs, a UIA fraud investigator, recommended that the UIA apply the March 11, 2010 finding of no fraud to all of claimant's 2009 to 2010 unemployment reporting, stating that she "found the misrepresentation to be unintentional in nature."

Over two years later, however, on July 30, 2013, the UIA mailed claimant a document titled "determination or redetermination." In the document, the UIA stated:

> A fraud investigation reveals you collected benefits for weeks ending 6/13/09 through 7/4/09, 7/18/09, 7/25/09, 8/15/09 through 10/3/09, and 10/17/09 through 4/10/10 while working for Hope Network West Michigan. You are entitled to reduced benefits weeks ending 9/5/09, 9/12/09, 9/19/09, 9/26/09, 10/3/09, 11/7/09, 11/28/09, 12/26/09, 1/2/10, and 1/30/10 through 4/10/10; you are ineligible for all other benefits listed, in accordance with [MESA] Sections 27(c) & 48. Restitution is due . . . .
>
> Your actions are considered to have been *intentional* because you failed to disclose a material fact to obtain or increase your benefits. [Emphasis added.]

In the notice, the UIA stated that claimant owed $4,625 in restitution under MCL 421.62(b) and $18,452.72 in penalties under MCL 421.54(b) of the MESA. At the bottom of the page, a box was checked indicating that the document constituted a "Redetermination of Determination 07/30/13."

Claimant challenged the July 30, 2013 redetermination in April 2016. After a series of exchanges and denials on the basis of claimant's late requests, a hearing was finally granted in 2018, before an administrative law judge (ALJ). After hearing arguments on the matter, the ALJ issued an order finding that the UIA's July 30, 2013 redetermination was barred by res judicata because it addressed substantially all the same weeks covered in the March 11, 2010 no-fraud redetermination. Further, the ALJ found that the July 30, 2013 "redetermination" was issued improperly under "Section 32a and 32(d) (now 32(f))." Therefore, the ALJ set aside the July 30, 2013 redetermination as null and void and found that claimant owed no penalties or restitution. However, the ALJ also noted that claimant did not timely file her appeal and had not shown good cause for the delay.

The UIA appealed the ALJ's decision to the UIAC.[2] It argued that the ALJ improperly decided an underlying legal issue before deciding the issue of good cause. The UIA further asserted that, regardless of the alleged deficiency of the redetermination, claimant's arguments should not have been considered because she failed to show good cause for her late protest.

After reviewing the case and the parties' arguments, the UIAC modified the ALJ's ruling. The UIAC agreed that the weeks involved in the March 11, 2010 no-fraud redetermination were final and precluded from modification by the July 30, 2013 redetermination. However, the weeks that the earlier determination did not cover—the five weeks ending March 13, 2020 through April 10, 1010—were not precluded from review because they had not already been adjudicated by the UIA. Therefore, the July 30, 2013 redetermination was final "and in full force" as it related only to those five weeks. The UIAC also noted that although the March 11, 2010 no-fraud redetermination was marked as a *re*determination, it was the UIA's first decision regarding the issue of fraud.

The UIAC further found that because the UIA issued the July 30, 2013 redetermination regarding the weeks already covered by the March 11, 2010 no-fraud redetermination without jurisdiction, claimant was able to challenge it at any time. However, the UIAC also determined that claimant did not establish good cause for her late protest of the July 30, 2013 redetermination generally, which, as stated, still applied in force to the final five weeks. The UIAC also addressed the issue of restitution and penalties, stating that the penalties assessed in this case were left "unreasonably harsh and punitive" after the reduction to only five weeks adjudicated. The UIAC concluded that it did not have the authority to reduce the penalties and urged the circuit court to consider doing so on an appeal.

Claimant then appealed to the circuit court. Claimant argued that although the March 11, 2010 no-fraud redetermination was made in compliance with the applicable time lines under MCL 421.32a, the July 30, 2013 redetermination was not made in compliance with the applicable time lines. She maintained that the last benefit check issued to her was final in April 2011. The agency did not receive any new information that supported a finding of fraud. Therefore, the UIA's July 30, 2013 redetermination was void for lack of jurisdiction because it was not issued within the required 30-day or one-year reconsideration time frame under MCL 421.32a. Claimant also argued that, even if the benefit checks were not considered individual determinations, the UIA improperly issued a redetermination without an underlying determination. Claimant challenged the fine levy. She maintained that the fines should be waived by the trial court. She further argued that the amount was unconstitutionally excessive compared to the actual damages that remained.

The UIA conceded that it did not have jurisdiction in July 2013 to readjudicate the weeks that were already adjudicated in the March 11, 2010 no-fraud redetermination. However, the UIA argued that it had the authority to address the remaining five weeks under § 62 because the UIA was allowed up to six years to review those weeks not subject to any prior decision. The UIA

---

[2] The UIA originally appealed the ALJ's decision to the Michigan Compensation Appellate Commission (MCAC). However, duties of the MCAC were transferred to the UIAC upon the UIAC's creation in 2019. See Executive Order No. 2019-13.

acted on claimant's misrepresentations within six years under § 62 and, therefore, acted in a timely manner. Further, because the July 30, 2013 redetermination was the first that addressed the five weeks ending March 13, 2010 through April 10, 2010, § 32a did not apply.

The UIA also disputed claimant's assertion that the issuance of a benefit check constituted a determination under the MESA. Although former § 32(d) stated that a benefit check was "considered a determination" that the claimant was eligible for benefits, that was not the same as the determination of a disputed issue that triggered the reconsideration process under § 32a. In this case, the UIA claimed its July 30, 2013 redetermination was the first determination of the five weeks in question following protests and information received by claimant's employer. The UIA also argued that the titling of the July 30, 2013 document as a "redetermination" did not make a difference. It reasoned that the document constituted a first determination regarding the weeks of March 13, 2010 through April 10, 2010, because claimant had opportunities to appeal. For that reason, the UIA argued that it was even more clear that the time line under § 62 applied rather than § 32a. Therefore, the UIA acted within the proper time limit.

In a short order, the trial court affirmed the decision of the UIAC, but it declined to alter the statutory penalties that had already been assessed against claimant. Claimant moved for reconsideration, which the trial court denied.

This appeal followed.

## II. ANALYSIS

Claimant argues on appeal that the UIA had no authority to issue its July 30, 2013 redetermination because it was issued after the applicable statutory time line under § 32a expired. Allowing the redetermination to stand would effectively eviscerate § 32a of the MESA. Further, claimant argues that the UIA improperly issued its redetermination despite it being barred under the principle of res judicata because it had already found that claimant did not engage in fraud. We agree.

MCL 421.38 governs appeals from the UIAC to the circuit court. *Hodge v US Security Assoc, Inc*, 497 Mich 189, 193; 859 NW2d 683 (2015). Section 38(1) of the MESA states, in pertinent part, as follows:

> The circuit court in the county in which the claimant resides . . . may review questions of fact and law on the record made before the administrative law judge and the [UIAC] involved in a final order or decision of the [UIAC], and may make further orders in respect to that order or decision as justice may require, but the court may reverse an order or decision only if it finds that the order or decision is contrary to law or is not supported by competent, material, and substantial evidence on the whole record. [MCL 421.38(1).]

Decisions of an administrative body are reviewed by the circuit court for conformance with the law and whether "competent, material, and substantial evidence supports it." *Hodge*, 497 Mich at 193. If the administrative body's decision is supported by substantial evidence, the reviewing court must defer to the administrative body's judgment. *Id*. at 193-194. This Court, in turn,

"reviews a circuit court's decision to determine whether the lower court applied correct legal principles and whether it misapprehended or misapplied the substantial-evidence test to the agency's factual findings." *Id*. at 194 (quotation marks, citation, and alteration omitted). However, "[w]hether an administrative agency exceeded its scope of authority or misapplied the law are questions of law that are reviewed de novo." *Dep't of Licensing & Regulatory Affairs/Unemployment Ins Agency v Lucente*, 508 Mich 209, 230; 973 NW2d 90 (2021). "Questions of statutory interpretation are also reviewed de novo." *Id.*

The prior version of § 32a(1) of the MESA stated as follows:

> Upon application by an interested party for review of a determination, upon request for transfer to a referee for a hearing filed with the commission within 30 days after the mailing or personal service of a notice of determination, or upon the commission's own motion within that 30-day period, the commission shall review any determination. After review, the commission shall issue a redetermination affirming, modifying, or reversing the prior determination and stating the reasons for the redetermination, or may in its discretion transfer the matter to a referee for a hearing. If a redetermination is issued, the commission shall promptly notify the interested parties of the redetermination, the redetermination is final unless within 30 days after the mailing or personal service of a notice of the redetermination an appeal is filed with the commission for a hearing on the redetermination before a referee in accordance with section 33. [MCL 421.32a(1), as amended by 1996 PA 503, effective January 7, 1997.]

Section 32a(2) of the MESA allowed up to one year to protest or appeal a determination or redetermination, but only when the claimant could show good cause for not doing so within 30 days:

> The commission may, for good cause, including any administrative clerical error, reconsider a prior determination or redetermination after the 30-day period has expired and after reconsideration issue a redetermination affirming, modifying, or reversing the prior determination or redetermination, or transfer the matter to a referee for a hearing. A reconsideration shall not be made unless the request is filed with the commission, or reconsideration is initiated by the commission with notice to the interested parties, within 1 year from the date of mailing or personal service of the original determination on the disputed issue. [MCL 421.32a(2), as amended by 1996 PA 503, effective January 7, 1997.]

On appeal, claimant asserts that each issuance of a benefit check to claimant constituted an original determination. Because the last benefit check was issued more than one year before the July 30, 2013 redetermination, the redetermination was void as untimely. Claimant cites former § 32(d) of the MESA, which is now substantively § 32(f), see 2013 PA 144, effective October 29, 2013, in support of this assertion. Former § 32(d) stated as follows:

> The issuance of each benefit check shall be considered a determination by the unemployment agency that the claimant receiving the check was covered during the compensable period, and eligible and qualified for benefits. A chargeable

employer, upon receipt of a listing of the check as provided in section 21(a), may protest by requesting a redetermination of the claimant's eligibility or qualification as to that period and a determination as to later weeks and benefits still unpaid that are affected by the protest. Upon receipt of the protest or request, the unemployment agency shall investigate and redetermine whether the claimant is eligible and qualified as to that period. If, upon the redetermination, the claimant is found ineligible or not qualified, the unemployment agency shall investigate and determine whether the claimant obtained benefits, for 1 or more preceding weeks within the series of consecutive weeks that includes the week covered by the redetermination, improperly as the result of administrative error, false statement, misrepresentation, or nondisclosure of a material fact. If the unemployment agency finds that the claimant has obtained benefits through administrative error, false statement, misrepresentation, or nondisclosure of a material fact, the unemployment agency shall proceed under the appropriate provisions of section 62. [MCL 421.32(d), as amended by 2002 PA 192, effective April 26, 2002.]

In *Lucente*, 508 Mich at 235, however, the Michigan Supreme Court clarified that an eligibility determination and issuance of a benefit check are not the same as a determination of fraud. "[T]he issue of fraud does not relate to whether or not the claimant was eligible or qualified during any period of time." *Id*. (quotation marks and citation omitted). Nor is the issue of fraud in dispute at the time a claimant receives benefit checks. *Id*. at 238. "[T]he benefit check cannot serve as a 'determination' for an Agency-initiated 'redetermination' finding that a claimant received benefits to which they were not entitled regardless of whether § 32a's time constraints have been satisfied." *Id*. at 241. Therefore, the UIA must first issue a separate determination at the time it alleges that a claimant committed fraud. *Id*. at 238.

The rule directing the UIA when overpayments are found to have been made to a claimant, including those made as a result of fraud under § 54(b)[3] of the MESA, is found in § 62. In 2010, that section stated, in relevant part, as follows:

---

[3] Section 54(b) of the MESA states, in relevant part, as follows:

An employing unit or an officer or agent of an employing unit, a claimant, an employee of the commission, or any other person who makes a false statement or representation knowing it to be false, or knowingly and willfully with intent to defraud fails to disclose a material fact, to obtain or increase a benefit or other payment under this act or under the unemployment compensation law of any state or of the federal government, either for himself or herself or any other person, to prevent or reduce the payment of benefits to an individual entitled thereto or to avoid becoming or remaining a subject employer, or to avoid or reduce a contribution or other payment required from an employing unit under this act or under the unemployment compensation law of any state or of the federal government, as applicable, is punishable as provided in this subsection . . . . [MCL 421.54(b).]

(a) If the commission determines that a person has obtained benefits to which that person is not entitled, the commission may recover a sum equal to the amount received. . . . The commission shall not recover improperly paid benefits from an individual more than 3 years, or more than 6 years in the case of a violation of section 54(a) or (b) or sections 54a to 54c, after the date of receipt of the improperly paid benefits unless: (1) a civil action is filed in a court by the commission within the 3-year or 6-year period, (2) the individual made an intentional false statement, misrepresentation, or concealment of material information to obtain the benefits, or (3) the commission issued a determination requiring restitution within the 3-year or 6-year period. Furthermore, except in a case of an intentional false statement, misrepresentation, or concealment of material information, the commission may waive recovery of an improperly paid benefit if the payment was not the fault of the individual and if repayment would be contrary to equity and good conscience.

* * *

(c) Any determination made by the commission under this section is final unless an application for a redetermination is filed with the commission in accordance with section 32a.

(d) The commission shall take the action necessary to recover all benefits improperly obtained or paid under this act, and to enforce all penalties under subsection (b). [MCL 421.62, as amended by 1995 PA 125, effective June 30, 1995.]

As indicated in subsection (c), a determination of fraud is final unless a claimant applies for a redetermination. Determinations and redeterminations are "distinct decision-making steps." *Lucente*, 508 Mich at 242. A redetermination addressing fraud cannot be issued without a prior determination of the same. *Id*. at 246. Similarly, "[a] decision requiring restitution or alleging fraud cannot begin with a redetermination under § 32a." *Id*. at 234. "The Agency must issue an original "determination" when it is alleging that a claimant engaged in fraud." *Id*. at 238.

In this case, the July 30, 2013 adjudication document addressed various dates from June 13, 2009 to April 10, 2010. These dates represented all the weeks previously decided in the March 11, 2010 no-fraud redetermination,[4] as well as five weeks ending March 13, 2010 through April 10, 2010. The July 2013 adjudication was the first document issued by the UIA regarding the weeks ending March 13, 2010 through April 10, 2010. Although the July 30, 2013 document was titled

---

[4] The UIAC found that the weeks also contained in the March 11, 2010 no-fraud redetermination were barred from reconsideration in July 2013 under the principle of res judicata. That finding is not challenged on appeal.

"Determination or Redetermination," the checked box at the bottom of the page specifically indicated the UIA issued the document as a redetermination.

The UIAC recognized that the document was the first time that the five weeks in question had been addressed and, as a result, considered it a de facto determination as to those weeks. Applying the holding in *Lucente*, however, the redetermination label on the document improperly directed claimant to the wrong set of options and rights.[5] As a redetermination issued without a prior determination, it must be set aside. However, unlike the consolidated cases in *Lucente*, which were timely protested and appealed, claimant in the instant case failed to timely act on the July 30, 2013 document regardless of how it was labeled.

On one hand, the UIA's error in sending a redetermination without a prior determination preceded claimant's ability to respond. With the document set aside, claimant's tardiness in responding is irrelevant. On the other hand, claimant did not timely act on her rights regardless of what the UIA intended the document to be. A series of protests, denials, requests for reconsideration, and new denials labeled "redeterminations" were subsequently exchanged between claimant and the UIA. Although the redeterminations in this exchange addressed the issue of timeliness under § 32a, the UIA eventually granted a hearing with the ALJ to reconsider the issue under § 54(b), fraud. But claimant's eventual opportunity for a hearing does not undo the fact that the trajectory of the case continued in accordance with the UIA's original labeling of the July 30, 2013 document as a redetermination. Returning to the holding in *Lucente*, we conclude that the UIA's error was not harmless and warranted invalidation of the improperly issued redetermination of July 30, 2013. Because the July 30, 2013 redetermination was invalid *ab initio*, the remainder of claimant's arguments on appeal regarding the associated penalties are moot.

Reversed.

/s/ Elizabeth L. Gleicher
/s/ Jane E. Markey
/s/ Michelle M. Rick

---

[5] Indeed, claimant sent her first "protest" to the fax number specified under claimant's rights regarding a *redetermination*.